ATTORNEYS FOR APPELLEE
Jeffrey D. Claflin
Thao T. Nguyen
South Bend, Indiana

Gregory M. Gotwald
Theresa M. Willard
Indianapolis, Indiana

ATTORNEYS FOR APPELLANTS
CHUBB CUSTOM INS. CO. AND
TRAVELERS INDEM. CO. OF ILLI-
NOIS
Charles Browning
Jeffrey C. Gerish
Bloomfield Hills, Michigan

Bryce H. Bennett, Jr.
Jeffrey B. Fecht
Indianapolis, Indiana

ATTORNEYS FOR APPELLANT
WESTCHESTER FIRE INS. CO.,
ASSUMING REINSURER OF
FREEMONT INDEM. CO. (SUC-
CESSOR TO INDUS. INDEM. CO.)
Brian E. Mahoney
Chicago, Illinois

Bruce L. Kamplain
Indianapolis, Indiana

ATTORNEYS FOR APPELLANT
CONTINENTAL INS. CO.
Karen W. Howard
Chicago, Illinois

Martha S. Hollingsworth
Indianapolis, Indiana

ATTORNEY FOR APPELLANT
GAN NORTH AMERICAN INS.
CO.
Edward F. Harney, Jr.
Indianapolis, Indiana

ATTORNEYS FOR APPELLANT
LIBERTY INS. UNDERWRITERS,
INC.
Barbara A. Jones
Dennis F. Cantrell
Indianapolis, Indiana

ATTORNEYS FOR AMICI CURIAE
ELI LILLY & CO., CITIZENS
ENERGY GROUP, VECTREN
CORP., INDIANA MFG.
ASS'N, NAT'L SOLID WASTE
MGMT. ASS'N, AND INDIANA
PETROLEUM MARKETERS AND
CONVENIENCE STORES ASS'N,
INC.
Frank J. Deveau
Thomas A. Barnard
Indianapolis, Indiana

ATTORNEYS FOR AMICUS
CURIAE COMPLEX INS. CLAIMS
LITIG. ASS'N
Michael A. Dorelli
Patrick J. Olmstead, Jr.
Indianapolis, Indiana



FILED
Dec 29 2010, 12:12 pm
CLERK
of the supreme court,
court of appeals and
tax court

## In the
## Indiana Supreme Court

No. 49S04-1006-CV-318

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA, ET AL,

*Appellants (Defendants below),*

v.

STANDARD FUSEE CORPORATION,

*Appellee (Plaintiff below).*

Appeal from the Marion County Superior Court, No. 49D14-0512-PL-48895
The Honorable S.K. Reid, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A04-0811-CV-665

**December 29, 2010**

**Sullivan, Justice.**

Insurance companies question whether they have a duty to defend an insured in environmental remediation proceedings under policies alleged to cover risks in Indiana and California. Predicate to answering that question is determining whether the law governing the policies' interpretation is "site-specific" (whereby Indiana law governs the policies' interpretation with respect to the Indiana site and California law with respect to the California site) as held by the Court of Appeals or "uniform" (whereby a single state's law governs) as argued by both parties. But while agreeing that the interpretation should be uniform, the insurance companies argue that Maryland law applies; the insured argues for Indiana law.

The uniform approach has long been Indiana law and we reaffirm it here. Under that approach, we find that Maryland is the state with the most intimate contacts to the facts and that its law should therefore be applied to resolve this dispute.

**Background**

Standard Fusee Corporation ("SFC"), a manufacturer of emergency signaling flares, is incorporated in Delaware and headquartered in Maryland. When it incorporated in 1988, SFC owned one facility in Maryland, two in Pennsylvania, one in New Jersey, and one in Ohio. Also in 1988, SFC began leasing facilities in both Indiana and California from Olin Corporation ("Olin"); in the same year, it sold its facilities in both Pennsylvania and Ohio. In 1992, SFC purchased another facility in Pennsylvania and in 1995, ceased operations at its California facility.

2

From 1995 to 2002, SFC owned and operated a facility in Illinois. In 1997, SFC purchased the Indiana facility from Olin. Today, SFC has operations in Maryland, Indiana, and Pennsylvania.

SFC purchased the comprehensive general liability ("CGL") primary, excess, and umbrella insurance policies at issue in this case through two brokers, one located in Maryland and one located in Massachusetts. All discussions with respect to the purchase of these policies occurred at SFC's Maryland headquarters. The policies were delivered to and retained in and all premiums were paid from SFC's Maryland headquarters. The policies do not contain any provisions specifying the law of the state that would govern their interpretation.

In 2002, SFC learned that perchlorate, a chemical used in the production of flares, had been discovered in groundwater samples at and around its former California facility. Thereafter, more than 250 lawsuits were filed against SFC in California, but they were ultimately dismissed when it was determined that SFC had never discharged perchlorate there. SFC is not currently subject to present or future remediation orders with respect to its California facility.

In 2004, SFC voluntarily tested its Indiana facility. The test suggested potential perchlorate contamination. SFC applied for, and was granted, inclusion in the Indiana Department of Environmental Management's Voluntary Remediation Program the following year.

SFC requested defense and indemnification from the companies that had issued the insurance policies discussed above ("Insurers") with respect to the proceedings in California and Indiana. Insurers either disputed that they had obligations to defend and indemnify SFC or otherwise failed to respond to SFC's request.

In 2005, SFC filed this action against Insurers seeking a declaratory judgment that Insurers were required to defend and indemnify SFC under the CGL policies against environmental liabilities arising in Indiana and California and seeking damages for Insurers' failure to defend and indemnify. In 2006, SFC sought partial summary judgment that Indiana law governed the interpretation of the policies and that the Insurers had a duty to defend. The trial court granted

partial summary judgment on these grounds. Insurers sought, and were granted, an interlocutory appeal of the trial court's order.

The Court of Appeals reversed the trial court's determination that Indiana law governed the entire dispute. Instead, the Court of Appeals adopted a "site-specific" approach to choice of law, whereby Indiana law governed the interpretation of the policies with respect to the Indiana site and California law with respect to the California site.[1] Nat'l Union Fire Ins. Co. v. Standard Fusee Corp., 917 N.E.2d 170, 181 (Ind. Ct. App. 2009).

Both SFC and Insurers sought, and we granted, transfer, Nat'l Union Fire Ins. Co. v. Standard Fusee Corp., 929 N.E.2d 796 (Ind. 2010) (table), thereby vacating the opinion of the Court of Appeals, Ind. Appellate Rule 58(A).

**Discussion**

**I**

This case typifies frequently recurring disputes over insurers' obligations to defend and indemnify their insureds in the face of demands to clean up or pay for environmental contamination at multiple sites in multiple states. "'At the very core of these disputes, which have spawned hundreds of reported cases nationwide, is the interpretation to be accorded certain contractual language contained in [CGL] policies.'" Symeon C. Symeonides, Choice of Law in the American Courts in 1998: Twelfth Annual Survey, 47 Am. J. Comp. L. 327, 361 (1999) (footnote omitted). Predicate to that interpretation is determining applicable law. Courts faced with these cases have generally addressed choice-of-law issues in one of two ways – either by what is called a "uniform-contract-interpretation" approach or by a "site-specific" approach. Id. at 362. The uniform-contract-interpretation approach applies the law of a single state to the whole contract

---

[1] The Court of Appeals also held that, under Indiana law, the absolute pollution exclusions in the CGL policies were unenforceable and SFC's participation in the Voluntary Remediation Program was a "suit" for purposes of determining Insurers' duty to defend. Standard Fusee Corp., 917 N.E.2d at 185-86. Given our resolution of this case, we express no opinion beyond that set forth in this decision on these or other issues addressed by the Court of Appeals.

4

even though it covers multiple risks in multiple states; the site-specific approach applies the law of the state or states where the insured risks are located, unless another state has a more significant relationship to the particular issue. Id.

The Indiana Court of Appeals has faced cases similar to the present one at least four times in the recent past and in each case has applied the uniform-contract-interpretation approach to resolve choice-of-law issues. Am. Emp'rs Ins. Co. v. Coachmen Indus., Inc., 838 N.E.2d 1172, 1181 (Ind. Ct. App. 2005); Hartford Accident & Indem. Co. v. Dana Corp., 690 N.E.2d 285, 293-94 (Ind. Ct. App. 1997), trans. denied; see also Emp'rs Ins. of Wausau v. Recticel Foam Corp., 716 N.E.2d 1015, 1024-25 (Ind. Ct. App. 1999) (determining which state's law should apply to a multisite, multistate dispute), trans. denied; Travelers Indem. Co. v. Summit Corp. of Am., 715 N.E.2d 926, 931-33 (Ind. Ct. App. 1999) (same). But see Pulse Eng'g, Inc. v. Travelers Indem. Co., 679 F. Supp. 2d 969 (S.D. Ind. 2009) (adopting the site-specific approach solely on the authority of the decision of the Court of Appeals in this case). Indeed, the Court of Appeals in this case recognized the prior practice of generally following the uniform-contract-interpretation approach but nevertheless applied the site-specific approach. Standard Fusee Corp., 917 N.E.2d at 178, 181.

Both SFC and Insurers urge this Court to conclude that Indiana should continue its adherence to the uniform-contract-interpretation approach. After reviewing our doctrine's history, we conclude that the uniform approach is more consistent with Indiana's choice-of-law jurisprudence, and as such, should apply in cases involving multisite, multistate insurance policies.

**A**

As a preliminary matter, we recognize that the courts of the state in which the lawsuit is pending determine the applicable law. Hubbard Mfg. Co. v. Greeson, 515 N.E.2d 1071, 1073 (Ind. 1987). Here, because SFC filed suit in Indiana, Indiana choice-of-law rules apply. Further, this case presents a choice-of-law problem because SFC contends that the laws of the State of Maryland and the laws of the State of Indiana differ in their interpretation of insurance contracts in general and the pollution exclusion in particular, Allen v. Great Am. Reserve Ins. Co., 766

N.E.2d 1157, 1162 (Ind. 2002), although, as noted in footnote 1, supra, we express no opinion on whether that is the case.

In the first half of the twentieth century, choice-of-law determinations in contract cases "followed a rigid territorialist-rule system . . . . [that] mandated the application of the law of the . . . place in which the contract was made (*lex loci contractus*), . . . regardless of any other contacts or factors." Symeon C. Symeonides, Oregon's New Choice-of-Law Codification for Tort Conflicts: An Exegesis, 88 Or. L. Rev. 963, 966 (2009) [hereinafter Oregon's New Choice-of-Law] (footnote omitted). In 1945, Chief Justice Richman's opinion for our Court in W.H. Barber Co. v. Hughes led our sister states into the modern age[2] by providing the following choice-of-law rule in contracts cases: "The court will consider all acts of the parties touching the transaction in relation to the several states involved and will apply as the law governing the transaction the law of that state with which the facts are in most intimate contact." 223 Ind. 570, 63 N.E.2d 417, 423 (1945) (emphasis added). The rule was based on academic syntheses of decided cases that had "'examine[d] all the circumstances which could be supposed to have influenced the actions of the parties, and [found] the most intimate contact at that place which might be characterized as the center of gravity of the circumstances.'" Id. (quoting Harper & Taintor, Cases on Conflict of Laws 173, 175 (1937)). W.H. Barber Co. held that in choice-of-law cases involving contracts, the law of the state in which the transaction is "most closely associated" applies. Id.

As may be inferred from footnote 2, supra, W.H. Barber Co.'s "most intimate contact" rule is consistent with the approach that was to be taken by the Restatement (Second) of Conflict of Laws (1971). Restatement (Second) section 188 (the Reporter's notes of which cite to W.H.

_____

[2] The pioneering influence of W.H. Barber Co. is discussed in many places. See, e.g., Herma Hill Kay, Chief Justice Traynor and Choice of Law Theory, 35 Hastings L.J. 747, 755 n.60 (1984) (recounting that when California Chief Justice Traynor wrote two "pathbreaking" choice-of-law opinions in 1953 and 1955, "only one other state court judge, Chief Justice Frank N. Richman of the Indiana Supreme Court, had attempted to deal with 'the unsatisfactory state of the decisions'"); Symeonides, Oregon's New Choice-of-Law, supra, at 967 n.11 (describing the analysis of W.H. Barber Co. and two later cases from other jurisdictions to be "generally considered the transitional point between the traditional system and modern approaches"); Symeon C. Symeonides, The First Conflicts Restatement Through the Eyes of Old: As Bad as Its Reputation?, 32 S. Ill. U. L.J. 39, 79 & n.196 (2007) (citing W.H. Barber Co. as a predecessor to two New York cases that began "the widely-hailed American conflicts revolution").

6

Barber Co.) looks for the state with the "most significant relationship to the transaction and the parties" and, in determining that relationship, considers certain contacts: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. Indeed, the factors provided in this section have guided our courts in determining the state in most intimate contact; Restatement (Second) section 193, to which subsection (3) of section 188 defers, has further guided our courts' consideration of the subject matter of the contract.[3] Coachmen Indus., 838 N.E.2d at 1176-77; Recticel Foam Corp., 716 N.E.2d at 1024-25; Summit Corp., 715 N.E.2d at 931; Dana Corp., 690 N.E.2d at 291. Accordingly, this Court has recognized that "[a]n insurance policy is governed by the law of the principal location of the insured risk during the term of the policy." Dunn v. Meridian Mut. Ins. Co., 836 N.E.2d 249, 251 (Ind. 2005) (citing Dana Corp., 690 N.E.2d at 291, and Restatement (Second) § 193). Thus, when we have considered the state in most intimate contact in insurance contract cases, we have looked first to the principal location of the insured risk.

As an aside, our tort choice-of-law analysis has not allowed for *dépeçage*, or "the process of analyzing different issues within the same case separately under the laws of different states." Simon v. United States, 805 N.E.2d 798, 801 (Ind. 2004). Specifically, we have stated that "[a]lthough Indiana allows different claims to be analyzed separately, it does not allow issues within those counts to be analyzed separately." Id. In other words, "an Indiana court might analyze a contract claim and a tort claim independently but would not separately analyze and apply the law of different jurisdictions to issues within each claim."[4] Id.

**B**

The general development of Indiana's choice-of-law rules leads us to conclude that the uniform-contract-interpretation approach is more consistent with our jurisprudence, as it applies

---

[3] Restatement (Second) section 193 generally provides that in insurance contracts, the applicable law is that of the state "which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship."

[4] See, e.g., Allen, 766 N.E.2d at 1162-70 (analyzing choice of law for each claim).

7

a single state's law to the entire contract. In the 65 years since W.H. Barber Co., we have fol-lowed a choice-of-law rule in contracts cases that contemplates contacts in multiple states but applies only the law of the state with the most intimate contacts.[5] See W.H. Barber Co., 63 N.E.2d at 423 ("The court will consider all acts of the parties touching the transaction in relation to the several states involved and will apply as the law governing the transaction the law of that state with which the facts are in most intimate contact." (emphasis added)). We see no reason why pollution sites in multiple states should be treated any differently than other contacts.

Further, while the Court of Appeals favored the site-specific approach in order to avoid considering the factors listed in Restatement (Second) section 188, see Standard Fusee Corp., 917 N.E.2d at 178, we find that an insufficient justification for rejecting the approach that has been an integral part of our choice-of-law analysis in contracts cases for two-thirds of a century.

We also think that our clear rejection of *dépeçage* in Simon, 805 N.E.2d at 801-03, supports adherence to the uniform-contract-interpretation approach and, in fact, has been cited by the Court of Appeals for this very proposition. See Ky. Nat'l Ins. Co. v. Empire Fire & Marine Ins. Co., 919 N.E.2d 565, 577 (Ind. Ct. App. 2010) (applying "Kentucky law to every issue raised with respect to the insurance coverage claims"). As the present case involves a request for a declaratory judgment based on the insurance contracts at issue, our jurisprudence favors applying a single state's law to the entire dispute.

To be sure, our concern in contracts cases has been determining the state in most intimate contact with the facts. A single event – like executing a contract – has not been determinative if that event occurred in a state with insignificant contacts. Similarly, where environmental conta-mination plagues multiple sites in multiple states, the site of the pollution should not control if it is not located in the state with the most intimate contacts. Thus, in insurance contract cases, we

---

[5] We note that our choice-of-law approach has been called the "center of gravity" or the "grouping of contacts" theory. Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99, 101 (1954). In general, "[a]ny approach that searches for a 'center' is more likely to lead to the centripetal uniform-contract solution rather than the centrifugal site-specific solution." Symeon C. Symeonides, Choice of Law in the American Courts in 2003: Seventeenth Annual Survey, 52 Am. J. Comp. L. 9, 58 (2004) (noting that the Second Circuit in Maryland Casualty Co. v. Continental Casualty Co., 332 F.3d 145 (2d Cir. 2003), endorsed the uniform-contract-interpretation approach when deciding a case under New York's center-of-gravity conflicts law).

first attempt to determine the principal location of the insured risk. Dunn, 836 N.E.2d at 251. If the principal location of the insured risk can be determined, it is given more weight than other factors. Restatement (Second) § 193 cmt. b. If no such location exists, we continue our analysis of the most intimate contacts. See Stonington Ins. Co. v. Williams, 922 N.E.2d 660, 666 (Ind. Ct. App. 2010) (noting that insurance contracts focus on the principal location of the insured risk, but, where there is no set location of that risk, attention turns back to the most intimate contacts factors provided in section 188). The law of the state in most intimate contact is then to be applied to the entire dispute.

## II

Having concluded that the uniform-contract-interpretation approach should be followed in cases like the present one, we now turn our attention to its application in this case. Although both SFC and Insurers petitioned for application of the uniform approach, they disagree as to which state's law – Indiana or Maryland – should be applied. As discussed in part I, supra, the law of the state with the most intimate contacts applies. In analyzing the respective contacts with Indiana and Maryland, the trial court in this case found that four of the five factors listed in Restatement (Second) section 188 were inconclusive but that one factor, the place of performance, clearly pointed to Indiana. We reach a different result.

We start by attempting to determine the principal location of the insured risk, or in the terms of Restatement (Second) section 188, the location of the subject matter of the contract. Restatement (Second) § 193 cmt. b. Unlike previous cases where the principal location of the insured risk was found to be the state having more insured sites than any other, in this case both Maryland and Indiana have one site each. See Coachmen Indus., 838 N.E.2d at 1181 (noting that the principal location of insured risk in Dana Corp., Summit Corp., and Recticel Foam Corp. was the state with the largest number of insured sites). In addition, the quantitative data submitted with respect to each of those sites is relatively comparable. Nevertheless, SFC is and has always been headquartered in Maryland. By making its headquarters in Maryland, SFC itself has recognized the principal nature of that location. To the extent the Maryland site and Indiana site

9

are otherwise relatively comparable, the fact that the Maryland site is also SFC's headquarters suggests that it is the principal location of the insured risk.

We continue our analysis by considering the other contacts present in this case. The fifth factor considers the domicile, residence, nationality, place of incorporation, and place of business of the parties. In Dunn, we initially recognized that the law of the principal location of the insured risk governs insurance policies. 836 N.E.2d at 251. We then concluded that Tennessee law governed because the policyholder was a Tennessee resident when he took out the policy; specifically, "by issuing a policy to a Tennessee resident, [insurer], which was domiciled in Indiana, became subject to [Tennessee law]." Id. In this case, SFC is a Delaware corporation with its headquarters in Maryland. Insurers are incorporated in and have their headquarters in many states, but none in Maryland or Indiana. Thus, the fifth factor tends to favor Maryland over Indiana, as it was home to SFC's headquarters when it took out these policies. See Recticel Foam Corp., 716 N.E.2d at 1025 (finding as a distinguishing factor the insured's principal place of business); see also Nautilus Ins. Co. v. Reuter, 537 F.3d 733, 740-42 (7th Cir. 2008) (focusing on the insureds' principal places of business when applying Indiana choice-of-law rules).

Further, although Insurers and brokers generally operated across state lines using various means of communication, all of SFC's written and verbal communication with the brokers originated from its Maryland headquarters. SFC's insurance procurement, review process, and decisionmaking all occurred in Maryland. The policies were retained in and the premiums were paid from Maryland. Although there may be no conclusive evidence of where the contract was formed[6] or the exact location of negotiation, the facts tend to favor Maryland.

Lastly, we consider the place of performance of the contract, or "'the location where the insurance funds will be put to use.'" Coachmen Indus., 838 N.E.2d at 1180 (quoting Dana Corp., 690 N.E.2d at 293). This is the only factor that the trial court found conclusively favored either state. It held that Indiana is the place of performance because it is the location of the "single clean-up site where the funds would be used." Appellant's App. 68. However, SFC explicit-

---

[6] Under Indiana law, "[a] contract 'is deemed to have been made in the state where the last act necessary to make it a binding agreement takes place.'" W.H. Barber Co., 63 N.E.2d at 421 (citation omitted).

ly stated in oral argument before this Court that a large amount of its claim arose from SFC successfully defending itself in California, and, after it remediated the site in Indiana, the dollars it received would be put toward the expenses it incurred in California. Thus, the place of performance is not exclusively Indiana.

Although none of factors are determinative, "the overall number and quality of contacts" favor Maryland over Indiana. Coachmen Indus., 838 N.E.2d at 1181. As the state in most intimate contact, we hold that the substantive law of Maryland applies to the entire dispute.

## Conclusion

Because Maryland is the state in most intimate contact, we reverse the trial court and remand this case for application of Maryland law to the entire dispute.

Shepard, C.J., and Dickson, Rucker, and David, JJ., concur.