In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 14-2725

VISTEON CORPORATION, *et al.*,

*Plaintiffs-Appellants*,

*v.*

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,

*Defendant-Appellee*.

———————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:11-cv-00200-RLY-TAB—**Richard L. Young**, *Chief Judge*.

———————

ARGUED JANUARY 7, 2015 — DECIDED JANUARY 23, 2015

———————

Before WOOD, *Chief Judge*, and POSNER and EASTERBROOK, *Circuit Judges*.

POSNER, *Circuit Judge*. Visteon, a large manufacturer of automotive parts, with manufacturing facilities scattered around the world but its headquarters in Michigan, brought this diversity suit for breach of contract against the National Union insurance company. Visteon had bought a liability

insurance policy from National Union providing worldwide liability coverage between 2000 and 2002. The policy contains an exclusion for liability resulting from pollution caused by Visteon, but the exclusion is expressly made inapplicable to liability arising from a "Completed Operations Hazard." National Union has refused to indemnify or defend Visteon from suits arising from pollution caused by one of Visteon's plants.

Although we call this Visteon's suit, there actually are two plaintiffs, the parent company and the subsidiary that held title to the plant that created the liability. But for simplicity we'll pretend there's only one plaintiff and call it Visteon, and we'll suppress other irrelevant complications as well.

The plant in question was in Connersville, Indiana. In 2001, and thus during the insurance coverage period, the powerful toxic solvent TCE that was used to clean machinery in the plant was discovered to have leaked into the soil and groundwater. Neighboring landowners sued Visteon for damages caused by the leakage. Visteon expended millions of dollars to settle the suits and additional millions to clean up the pollution that the leakage had caused. When National Union refused either to defend Visteon or to reimburse it for any of the costs it had incurred, Visteon filed this suit in an Indiana state court; National Union removed the case to federal district court.

A dispute soon arose between the parties over whether Indiana or Michigan law governed the substantive issues in the case. Visteon wanted Indiana law to apply because Indiana does not enforce standard pollution-exclusion clauses, and the insurance policy included as we noted such a clause;

Indiana requires that for such a clause to be enforceable the policy must "specify what falls within its pollution exclusion." *State Automobile Mutual Ins. Co. v. Flexdar, Inc.*, 964 N.E.2d 845, 851 (Ind. 2012). TCE is one of the pollutants that must be specified, and it was not specified in the policy that National Union had sold to Visteon. Michigan law, however, does enforce the more general kind of pollution-exclusion clause found in the policy, *City of Grosse Pointe Park v. Michigan Municipal Liability & Property Pool*, 702 N.W.2d 106, 114 (Mich. 2005), and so Michigan was National Union's preferred choice for the governing law. The district court ruled that Michigan law governed.

A second question addressed by the district court was whether, under Michigan law, Visteon's liability from the TCE leak was within the scope of the Completed Operations Hazard clause of the insurance policy, an exception as we mentioned to the pollution-exclusion clause. The district court ruled that Visteon was not entitled to coverage under that clause and so dismissed Visteon's entire suit. Having thus struck out in the district court, Visteon has appealed to us.

The parties agree as they must that the district judge was, and we are, required to apply the choice of law rules of the state in which the suit was brought, thus Indiana. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496–97 (1941). The object in picking the state whose law is to govern is to identify the state that has the closest relation to the transaction, activity, or event that gave rise to the litigation. In the case of the suits against Visteon—suits alleging nuisance, negligence, and related torts arising from the leakage of TCE—the closest relation was to Indiana. The plant, along with the

persons and properties affected by the leakage, were entirely within Indiana and Indiana had a compelling interest in a legal or regulatory solution whereby the plant would still be able to operate profitably, yet without harming its neighbors.

But the present litigation, though unthinkable without the tort suits, is of a different character. It arises from the insurance contract between Visteon and National Union, and the contract is not limited to Visteon's Connersville plant—it covers all of Visteon's plants, the world over. The Indiana Supreme Court has decided that in the case of an alleged breach of a contract insuring against liability for environmental contamination that could occur at different sites, Indiana will follow what is called the "uniform-contract-interpretation approach," which "applies the law of a *single* state to the whole contract even though [the contract] covers multiple risks in multiple states," and the single state that is chosen will usually be "the state having more insured sites than any other." *National Union Fire Ins. Co. of Pittsburgh, PA v. Standard Fusee Corp.*, 940 N.E.2d 810, 813, 815–16 (Ind. 2010) (emphasis added).

That approach would bind us even if we didn't think it sensible. But we think it eminently sensible. Visteon manufactures and sells its automotive parts all over the world; and any of its plants, or for that matter any of its products, can give rise to liabilities against which it wants to insure. It wants the law governing its insurance rights against National Union (which remember had insured Visteon against liability arising anywhere in the world) to be determined by the law of the state or province or nation or other jurisdiction in which it incurs liability, and so in this case it wants

Indiana law to govern its rights under the policy. The implication (which cannot be intended), given the uniform-contract-interpretation approach, is that Indiana law would govern all subsequent pollution damages caused by Visteon, wherever they occurred. Anyway it would be immensely difficult, and maybe impossible as a practical matter, for National Union to calculate a single premium for risks made so diverse by the worldwide scope of Visteon's operations. Suppose some country in which Visteon has a plant refuses, like Indiana, to enforce the kind of pollution-exclusion clause found in National Union's policy. That would expand Visteon's rights against its insurer. And so National Union would insist on charging a higher premium to Visteon to cover pollution caused by Visteon in that country than it would in states like Michigan that do enforce such clauses. Instead of charging a single premium to Visteon, National Union might end up charging hundreds of different premiums—all to the same insured.

Visteon misses this point, arguing that National Union knew, or at least had reason to foresee based on its substantial litigation experience with related claims, the additional risk posed by the Connersville Facility arising from its historic use of exceptionally large volumes of TCE." The implication is that National Union should have charged a higher premium for covering liabilities caused by operation of the Connersville plant in the insurance policy it issued to Visteon, because the insurer's risk in insuring that plant was greater than its average risk of insuring Visteon's plants. The result would be multiple different premiums to the same insured for the same insurance.

Since there are compelling reasons for National Union's charging a uniform premium to an insured despite the great variety of risks that it is insuring, and similarly compelling reasons for a single jurisdiction's law to govern disputes over terms in National Union's insurance contract, and the only choice of jurisdictions offered to the district court was between Indiana and Michigan, the court was right to choose Michigan. Fourteen of Visteon's manufacturing plants were located there (and no greater number in any other jurisdiction in which Visteon does business), and only three of its plants were in Indiana. Michigan is also the jurisdiction in which Visteon's headquarters is located and in which the personnel who administer its insurance contracts and negotiated the contract with National Union are stationed.

Simplest of all solutions would be for National Union to negotiate with its insureds for the designation of the jurisdiction whose laws would govern any litigation arising out of its insurance contracts. But the parties tell us that insurance companies are reluctant to negotiate such clauses. They apparently want the flexibility to pick the most favorable law after the risk has materialized, and in addition some states refuse to enforce choice of law clauses in insurance contracts on the ground (though hardly applicable to a large enterprise such as Visteon) that it is against public policy to allow insureds to waive protections intended for them. (Both these points are explained at length in Eugene Anderson et al., *Insurance Coverage Litigation* § 6.03[A] (2d ed. 2013).) In any event the only choice in this case was between Michigan and Indiana and the district court's choice of Michigan was clearly the superior choice, given Indiana choice of law principles

as articulated in the *Standard Fusee* case (and other cases, unnecessary to cite, as well).

The traditional rules of choice of law were simple, but, whether rightly or wrongly, have given way to multifactor tests—a bane of modern jurisprudence. (For apt criticism, see *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1391–92 (2014).) Even in the *Standard Fusee* case, the court, having designated Maryland as the lead candidate under Indiana's choice of law rules to supply the governing law, felt compelled to trudge through other factors, mainly the state where the risk insured against had materialized and the state where the insurance contract had been made. In the present case the risk materialized in Indiana, but that could not have been foreseen. Furthermore, the Indiana victims of the TCE leak were compensated by Visteon, and it is unclear what benefit the state would have derived from reimbursement of Visteon's costs by National Union.

A complication is that Louis Heeb, one of the landowners who sued Visteon over the pollution, entered into a settlement agreement with Visteon whereby Heeb's compensation under the settlement increases if Visteon obtains damages from National Union. Visteon argues that Indiana has an interest in seeing its citizen receive additional compensation, and Heeb is a citizen of Indiana. But if Heeb's speculative interest were deemed an interest of Indiana, then Visteon could select the state whose law would govern any dispute with its insurer simply by making a speculative contract with a citizen of its preferred state—promising to pay that citizen some amount of money in the event that Visteon incurred a liability in that state. Such an approach would make

it impossible to determine which jurisdiction's law applies before the risk materializes.

As for where the contract was made, which is the only other factor (drawn from the governing multifactor approach to choice of law) that is relevant in this case, no state can be designated as "the" state in which the insurance contract was made. The negotiations, ultimate signing of the insurance contract, and receipt of premiums by National Union occurred in Michigan, Illinois, and New York, but not in Indiana. This factor in the multifactor test falls out.

We're left with Michigan. Its law, as the district court found, determines whether National Union is liable to Visteon for the liabilities that Visteon incurred as a result of the contamination resulting from the leak of TCE from its Indiana plant.

The insurance policy excludes coverage for damages caused by "the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world"—which obviously encompasses the TCE leak. With Michigan enforcing pollution-exclusion clauses, Visteon is left to argue that what happened in Connersville is within an exception (part of the Completed Operations Hazard clause that we mentioned) to the pollution-exclusion clause for damages "occurring away from premises you own or rent and arising out of … Your Work except … work that has not yet been completed or abandoned." So the question is whether the TCE leaked by the Connersville plant was a result of completed "work." Visteon argues that its "work" was "completed" each time a contract to supply products made at the plant was performed. In response National Union points out that operations continued at the plant until

2007, long after the insurance policy expired, when Visteon ceased manufacturing at the plant.

Visteon's interpretation can't be right, because it erases the line between completed and ongoing operations. True, the definition of "complete" in the Completed Operations Hazard clause is murky: "when all of the work called for in your contract has been completed"; "when all of the work to be done at the site has been completed if your contract calls for work at more than one site"; or "when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project"—whichever is earliest. The first definition could as a semantic matter embrace pollution occurring after the completion of each contract to sell parts manufactured at the Connersville plant. The problem is that such an interpretation apparently would erase the pollution exclusion for *all* the pollution caused by the plant. For Visteon doesn't acknowledge that the pollution expenses resulting from the TCE leak have to be apportioned between products that the Connersville plant made under contract and products that it made hoping to sell but not yet having a contract to sell. It thinks the Completed Operations Hazard clause entitles it to reimbursement for the entire costs it incurred as a result of the pollution claims made against it. It thus interprets that clause as swallowing the entire pollution-exclusion clause—the exception becoming the rule. But is it plausible that National Union would have issued an insurance policy that vitiated the pollution-exclusion clause of an insurance policy that covers liabilities incurred by Visteon anywhere in the world?

Visteon's argument from the Completed Operations Hazard clause is wrong for another reason. Visteon doesn't explain why it should make a difference to coverage whether a fuel injection component (say) is sold pursuant to a contract, or is shipped to some distribution facility owned by Visteon where it is then offered for sale. The difference has nothing to do with pollution, so why should it affect the scope of an insurance policy that has a pollution-exclusion provision? The contract-completion exception is more plausibly read as referring to the end of a relationship with a buyer. Visteon doesn't address this possibility.

Most courts have interpreted "completed operations hazard" narrowly—more narrowly indeed than required to decide this case in favor of the insurance company. For example, in *Liberty Mutual Ins. Co. v. Triangle Industries, Inc.*, 957 F.2d 1153, 1158 (4th Cir. 1992) (New Jersey law), the court read that "the term 'completed operations hazard' refers to [a] … form of protection offered for the benefit of those policyholders who provide a service in addition to or instead of a particular product. ('Commentators are in complete agreement that this exclusion refers to accidents caused by defective workmanship which arise after completion of work by the insured on construction or service contracts.')" (citations omitted). See also *West Bend Mutual Ins. Co. v. United States Fidelity & Guaranty Co.*, 598 F.3d 918, 924–26 (7th Cir. 2010) (Indiana law); *Hydro Systems, Inc. v. Continental Ins. Co.*, 929 F.2d 472, 474–77 (9th Cir. 1991) (California law); *Gregory v. Tennessee Gas Pipeline Co.*, 948 F.2d 203, 207–08 (5th Cir. 1991) (Louisiana law); *CPS Chemical Co. v. Continental Ins. Co.*, 489 A.2d 1265, 1270 (N.J. Law Div. 1984), reversed on other grounds, 495 A.2d 886 (N.J. App. Div. 1985); *Buckeye Union Ins. Co. v. Liberty Solvents & Chemicals Co.*, 477

N.E.2d 1227, 1236–37 (Ohio App. 1984), abrogated on other grounds by *Hybud Equipment Corp. v. Sphere Drake Ins. Co.*, 597 N.E.2d 1096 (Ohio 1992); Jeffrey W. Stempel, *Stempel on Insurance Contracts* § 14.07[A][2] (3d ed. 2013 supplement). All these cases hold that pollution arising from ongoing operations (including manufacturing, as in several of the cases cited above) isn't covered by the Completed Operations Hazard clause, even though these are cases in which the insureds were completing their performance of particular sales contracts with customers.

We note finally that the pollution-exclusion clause is unambiguous, and therefore National Union had no duty to defend Visteon against the suits brought against it by neighboring landowners who experienced losses because of the leak of TCE from Visteon's Connersville plant.

Visteon has failed to make a case. The judgment in favor of National Union is therefore

AFFIRMED.