Adline T. BROOKS

v.

Gene A. COLTON, Appellant,

and

Township of Falls, Appellee.

Superior Court of Pennsylvania.

Argued April 25, 2000.
Filed Sept. 20, 2000.

---

Patrick J. Boland, Norristown, for appellant.

Charles J. Daly, Philadelphia, for Township of Falls, appellee.

BEFORE: DEL SOLE, POPOVICH and OLSZEWSKI, JJ.

POPOVICH, J.:

¶ 1 The defendant/appellant, Gene A. Colton, appeals the order that the appellee/Township of Falls' insurance carrier (American Automobile Insurance Co.) was not responsible for "primary" coverage regarding an accident involving the defendant. We affirm.

¶ 2 The undisputed facts reveal that Colton was employed as a crossing guard by the Township on November 2, 1994. While driving to work, the defendant struck the plaintiff, Adline T. Brooks, a pedestrian. Under the contract of employment with the Township, Colton was required to use his vehicle for work. All agree Colton was acting within the scope of his employment at the time of the accident, which resulted in a suit by the plaintiff against Colton and the Township. The case settled for $200,000.00 and the employee and the employer each agreed to pay one-half.

¶ 3 Thereafter, Colton's insurer and the Township's insurer reached an impasse over who was responsible for Colton's share. To resolve the dispute, the case was submitted (for a non-binding opinion) to Judge Rufe. He ruled the Township's insurer was primarily responsible for paying Colton's share. When the Township refused to accept this determination, Colton's efforts to enforce it proved fruitless—his insurer was ordered to pay the entire settlement by a subsequent court order. This appeal ensued.

¶ 4 Our inquiry concerns whether the collective bargaining agreement between the employee/Colton and the employer/Township was an "insured contract" so as to render the Township "primarily" responsible for Colton's contribution to the settlement.

¶ 5 Under 42 Pa.C.S.A. § 8548(a), a local agency shall indemnify its employee from financial loss incurred while performing acts within the scope of his employment. *Wiehagen v. Borough of North Braddock*, 527 Pa. 517, 594 A.2d 303 (1991). However, an employee's personal insurance carrier is not entitled to indemnification where the employer's policy of insurance shows that its coverage is "excess," i.e., over and above the "primary" coverage of any covered vehicle that is not owned by the local agency. *See Indemnity Ins. v. Motorists Mut. Ins.*, 551 Pa. 237, 710 A.2d 20 (1998), wherein the Supreme Court held an employee's insurer (Motorist) was not entitled to indemnification

from the local agency's insurer where the local agency's insurance policy expressly shifted financial responsibility to Motorist as the primary carrier in an automobile accident involving its employee in the course of employment. This did not offend the statutory indemnification provisions of Section 8548(a).

¶ 6 Consistent with *Indemnity*, we focus our attention upon the language of the policy of insurance to resolve the dispute over its scope. *Windrim v. Nationwide Ins. Co.*, 537 Pa. 129, 641 A.2d 1154 (1994).

¶ 7 At bar, Colton's personal automobile insurer (Colonial Penn) provided primary coverage for liability when he operated his vehicle. Further, the Colonial Penn policy contained provisions for "Other Insurance" (at Part A–Liability Coverage, page three):

If there is other applicable liability insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

The American Insurance Company policy of the Township provided at Section IV that "Other Insurance" included:

a. For any covered auto you own, this coverage form provides primary insurance. For any covered auto you don't own, the insurance provided by this coverage form is excess over any other collectible insurance. . . .

c. *Regardless of the provisions of paragraph a., above, this coverage form's liability coverage is primary for any liability assumed under an insured contract.* [Emphasis added]

¶ 8 In light of the preceding, given Colton's ownership of the vehicle involved in the accident, American's coverage would be primary only if the Township "assumed" Colton's liability under an "insured contract," which is defined in the American policy as:

That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another to pay for bodily injury or property damage to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

¶ 9 Colton argues that the collective bargaining agreement meets American's definition of an "insured contract" because the Township became liable via the agreement for torts committed in the scope of his employment.

¶ 10 Under the terms of the agreement, the Township obligated itself to pay crossing guards for hours worked in excess of those prescribed, with compensation at one and a half times their rate. This caused the crossing guards to be paid for travel time to and from work, which the Township concedes came within the scope of employment. Consequently, we need to decide whether the Township entered into an "insured contract," and, in the process, "assumed" liability for injuries caused while in the course and scope of employment.

¶ 11 To begin with, the phrase "insured contract" is one which contains language expressly assuming liability by virtue of a hold harmless and indemnification clause. *See, e.g., Allianz Insurance Co. v. Goldcoast Partners, Inc.*, 684 So.2d 336, 337 (Fla.App.1996); *Sanders v. Ashland Oil, Inc.*, 656 So.2d 643, 649 (La.App.1995); *Holman Erection Co. v. Employers Insurance of Wausau*, 142 Or.App. 224, 920 P.2d 1125, 1128 (1996); *Olympic, Inc. v. Providence Washington Insurance Co.*, 648 P.2d 1008, 1011 (Alaska 1982); *Smithway Motor Xpress, Inc. v. Liberty Mutual Insurance Co.*, 484 N.W.2d 192, 196 (Iowa 1992); *Couch on Insurance*, 3d, Section 129:30. Likewise, the standard policy language set forth in Long, *Law of Liability Insurance*, Vol. II (Matthew Bender) Section 10.05(2), discusses insurance policy language similar

to that present in the American policy; namely:

The key to understanding this exclusion, and its very important exception, is the concept of liability "assumed" by the insured. Although it could be argued that one assumes liability (i.e., a duty of performance, the breach of which will give rise to liability) whenever one enters into a binding contract, in the ... liability policies an "assumed" liability is generally understood and interpreted by the courts to mean the liability of another which one "assumes" in the sense that one agrees to indemnify or hold the other person harmless therefor. [Citations omitted]

¶ 12 Albeit there is no Pennsylvania case on point, we find *Lewis v. Hamilton*, 652 So.2d 1327 (La.1995) to be instructive in our efforts to resolve this dispute.

¶ 13 In *Lewis*, the plaintiff sued the operator and owner of a vehicle driven in the course of her employment as a School Board member. The tortfeasor's personal insurer conceded primary coverage. Nonetheless, the personal insurer argued that the tortfeasor's employer's business automobile insurer also provided primary coverage, which granted primary coverage for liability assumed by the insured/employer under an "insured contract." With the employer's business insurer providing co-primary coverage for the accident, the tortfeasor's personal insurer argued this allowed the exposure to liability by the driver's personal insurer to be reduced to a small portion of the damages, i.e., the first $100,000.00 in damages instead of the entire amount.

¶ 14 The Louisiana Supreme Court held that the School Board's employment agreement with its employee/defendant/driver was not an "insured contract" by which the School Board "assume[d] the tort liability of another." In the course of doing so, the Court interpreted "Other Insurance" language identical to that before us; to-wit:

The key word is "assume." The definition of "assume" is "to take on, become bound as another is bound, or put oneself in place of another as to an obligation or liability." Black's Law Dictionary 122 (6th ed.1990). A second definition is "to take upon oneself (the debts or obligations of another)." Webster's New Universal Unabridged Dictionary 91 (1989).

Under these definitions, the word "assume" in [the employer's insurer's] policy requires some exercise of volition on the part of the insured to undertake or incur liability which did not exist prior to the assumption. In this case, the employment contract merely gave rise to the status of the School Board as an employer. It was the law governing that status, and not any contractual assumption of liability, which made the School Board liable for its employee's tort. Furthermore, the word "another" in the pertinent policy provision, which apparently refers to an unrelated person for whom the Board would not be liable in the absence of contractual assumption of liability, supports the conclusion that the provision does not apply to the employees for whom the insured is vicariously liable by operation of law.

\* \* \* \*

We therefore conclude that the School Board's employment agreement with its employee was not an "insured contract" by which the School Board "assume[d] the tort liability of another." Accordingly, the coverage provided by [the employer's insurer's] policy is excess [and not co-primary].

652 So.2d at 1330 (emphasis deleted).

¶ 15 As in *Lewis*, we have scrutinized the employment contract but found no language amenable to an interpretation expressly binding the Township of Falls to "assume" liability for the torts that its employee/Colton committed during the course and scope of his employment. To

hold otherwise would be a distortion of the law viewed in light of the applicable facts.

¶ 16 Stated otherwise, aside from the law governing the status of the employer and the employee raising liability for damages incurred during the course of employment by a third party, *id.*; *see also* Harper, James and Gray, *The Law of Torts* § 26.7 (2d ed.1986), there is no assumption of liability by contract manifested in the collective bargaining agreement between the Township and the crossing guards. We hold the employment agreement is not an "insured contract" within the meaning of the employer/Township of Falls' business automobile insurance policy, which undermines the argument that the Township is primarily liable for the injuries caused by Colton during the course of employment.[1] *Lewis, supra.* As such, we find the Township's coverage is "excess" in nature and not "primary" due to the contractual terms and the law interpreting the same.

¶ 17 Order affirmed.

---

1. We have examined *Auto Owners Insurance Co. v. Motorists Mutual Insurance Co.*, 1992 WL 236861 (Ohio App. 12 Dist.), proffered by the appellant as analogous to the dispute here. We hold such is not the case because, at bar, there are no conflicting provisions in the policy covering whether the insurer intended to provide primary coverage or excess coverage. We read the contractual language as clearly establishing that the employer/Township of Falls purchased insurance exposing it to "excess" coverage and not "primary" liability when its employee/Colton incurred damages while in the course of his employment.