(June 30, 2017)

■ ERIE INSURANCE EXCHANGE, Appellant, v J.M. PEREIRA & SONS, INC., et al., Respondents. [57 NYS3d 823]—

Appeal from an order of the Supreme Court, Monroe County (Renee Forgensi Minarik, A.J.), entered November 12, 2015. The order, insofar as appealed from, denied plaintiff's motion for summary judgment.

It is hereby ordered that the order so appealed from is affirmed without costs.

Memorandum: Plaintiff, Erie Insurance Exchange, commenced this action seeking a declaration that it is not obligated to defend or indemnify defendant J.M. Pereira & Sons, Inc. (JMP) in an underlying personal injury action. We conclude that Supreme Court properly denied plaintiff's motion for summary judgment.

In 2006, several employees of JMP, a Pennsylvania corporation, were either injured or killed while working for JMP in New York State. At the time of the accident, the employees were allegedly working with waterproofing products produced by defendant RPC, Inc., also known as Rubber Polymer Corporation (RPC). The injured employee and the estates of the two employees killed in the accident commenced actions against various parties, including RPC, which in turn commenced third-party actions against JMP. At the time of the accident, JMP was insured by several insurance policies, two of which had been issued by plaintiff. One policy, the "Ultraflex Policy," provided insurance for property damage, but it has been exhausted and is not at issue on this appeal. The second policy, known as the "Business Catastrophe Liability Policy" (Business Corporation Law policy), provided commercial liability umbrella coverage.

RPC tendered its defense and indemnification to JMP, and both JMP and RPC tendered their defense and indemnification to plaintiff. Plaintiff denied the tender, contending that there was no contract or written agreement between RPC and JMP that would require defense and indemnification for the underlying claims and that RPC was not an additional insured under the Business Corporation Law policy. With respect to JMP, plaintiff reserved its rights to disclaim coverage based on a policy exclusion that excluded coverage for bodily injury to JMP's employees if such injury arose out of their employment or during the course of performing their duties related to JMP's business.

JMP was also insured by the State Workers' Insurance Fund of Pennsylvania (SWIF), which had issued a single policy containing "WORKERS COMPENSATION INSURANCE" and "EMPLOYERS LIABILITY INSURANCE." The employers liability insurance "applied to work in the State of Pennsylvania," or employment that was "necessary or incidental to [JMP's] work" in Pennsylvania. Based on the applicability of several policy exclusions, including the geographic limitations of the policy, the SWIF denied coverage.

Plaintiff thereafter commenced an action in Pennsylvania against JMP, RPC, the injured employee, and the estates of the two killed employees, seeking a declaration that it had no duty to defend and indemnify JMP in the underlying actions. That Pennsylvania action was dismissed "without prejudice to refile with joinder of all indispensable parties." Following that dismissal, plaintiff commenced the instant action in New York, seeking a declaration that it has no obligation to defend JMP

in the underlying actions and no obligation to indemnify JMP against any obligation it may incur in those underlying actions.

Before any depositions or any exchange of discovery between JMP and RPC, plaintiff moved for summary judgment, contending that Pennsylvania law governed interpretation of the Business Corporation Law policy and that exclusion G of that policy precluded coverage. All of the defendants opposed the motion.

Contrary to plaintiff's contention, we need not apply Pennsylvania law in order to interpret the provisions of the various insurance policies. "The first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved" (*Matter of Allstate Ins. Co. [Stolarz—New Jersey Mfrs. Ins. Co.]*, 81 NY2d 219, 223 [1993]). "There is no need to engage in conflicts of laws analysis absent a conflict between the laws of New York and Pennsylvania with respect to the applicability of basic tenets of contract interpretation" (*National Abatement Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa.*, 33 AD3d 570, 570 [2006]). Here, there is no such conflict (*compare Matter of Viking Pump, Inc.*, 27 NY3d 244, 257 [2016], *Pioneer Tower Owners Assn. v State Farm Fire & Cas. Co.*, 12 NY3d 302, 307 [2009], *and Belt Painting Corp. v TIG Ins. Co.*, 100 NY2d 377, 383 [2003], *with Babcock & Wilcox Co. v American Nuclear Insurers*, 131 A3d 445, 456 [Pa 2015], *Mutual Benefit Ins. Co. v Politsopoulos*, 631 Pa 628, 640 n 6, 115 A3d 844, 852 n 6 [2015], *and Penn-America Ins. Co. v Peccadillos, Inc.*, 27 A3d 259, 264-265 [Pa Super Ct 2011], *appeal denied* 613 Pa 669, 34 A3d 832 [2011]).

Exclusion G of the Business Corporation Law policy provides that coverage is excluded for bodily injuries to JMP employees "arising out of and in the course of . . . [e]mployment by [JMP]; or . . . [p]erforming duties related to the conduct of [JMP's] business." There are three exceptions to exclusion G, two of which are relevant to this appeal. The first provides that exclusion G "does not apply to liability assumed by the insured under an 'insured contract.' " Insofar as relevant to this appeal, the Business Corporation Law policy defines an "insured contract" as "[t]hat part of any other contract or agreement pertaining to [JMP's] business . . . under which [JMP] assume[s] the tort liability of another part [sic] to pay for 'bodily injury' or 'property damage' to a third person or organization. Tort liability means a liability that would be imposed by law in absence of any contract or agreement."

The second exception provides that exclusion G "does not apply to the extent that valid 'underlying insurance' for the employer's liability risks . . . exists or would have existed but for the exhaustion of the underlying limits for 'bodily injury'. Coverage provided will follow the provisions, exclusions and limitations of the 'underlying insurance' *unless otherwise directed by [the Business Corporation Law] insurance*" (emphasis added).

We conclude that plaintiff established, as a matter of law, that the first exception to exclusion G does not apply, and neither JMP nor RPC raised a triable issue of fact (*see generally Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). Specifically, plaintiff established that JMP did not assume the tort liability of RPC under any contract or agreement between JMP and RPC. Although JMP and RPC submitted evidence that there was a contract or agreement between them that would require JMP to name RPC as an additional insured on JMP's insurance policies, an agreement to name a party as an additional insured is not an agreement to assume liability in tort for that party (*see American Ins. Co. v Schnall*, 134 AD3d 746, 748-749 [2015]; *Nuzzo v Griffin Tech.*, 222 AD2d 184, 188 [1996], *lv dismissed* 89 NY2d 981 [1997], *lv denied* 91 NY2d 812 [1998]; *Hailey v New York State Elec. & Gas Corp.*, 214 AD2d 986, 986 [1995]; *cf. Tremco, Inc. v Pennsylvania Mfrs. Assn. Ins. Co.*, 832 A2d 1120, 1121-1122 [Pa Super Ct 2003]; *see also Brooks v Colton*, 760 A2d 393, 395-396 [Pa Super Ct 2000]).

We nevertheless conclude that the court properly denied plaintiff's motion inasmuch as plaintiff failed to establish, as a matter of law, that the second exception to exclusion G does not apply. The second exception contains a standard "follow the form" provision. Such a provision generally means that the umbrella policy incorporates the provisions of a valid underlying policy, and "is designed to match the coverage provided by the underlying policy" (*Highrise Hoisting & Scaffolding, Inc. v Liberty Ins. Underwriters, Inc.*, 116 AD3d 647, 648 [2014], *lv denied* 24 NY3d 908 [2014]; *see Viking Pump, Inc.*, 27 NY3d at 252; *Federal Ins. Co. v International Bus. Machs. Corp.*, 18 NY3d 642, 646 [2012]; *see also Kropa v Gateway Ford*, 974 A2d 502, 505 [Pa Super Ct 2009], *appeal denied* 605 Pa 701 [2010]). Nevertheless, the Business Corporation Law policy also provides that it will follow the form of the valid underlying insurance "unless otherwise directed" by the Business Corporation Law policy, and "we must construe the policy in a way that affords a fair meaning to all of the language employed by

the parties in the contract[, leaving] no provision without force and effect" (*Viking Pump, Inc.*, 27 NY3d at 257 [internal quotation marks omitted]).

The dissent adopts plaintiff's position that the geographic limitation of the underlying SWIF policy, i.e., limiting coverage to work in Pennsylvania, precludes coverage for the accident that occurred in New York. According to the dissent, the underlying SWIF policy was not "*valid* 'underlying insurance' " because it limited coverage to work in Pennsylvania (emphasis added). We respectfully disagree with that position. The dissent is interpreting the word "valid" to mean "applicable." In our view, the geographic limits of that policy do not affect the policy's *validity* but, rather, affects its *applicability*. Otherwise there would never be a situation where the "unless otherwise directed" language would have meaning. That phrase has meaning only if the underlying insurance has exclusions not found in the Business Corporation Law policy. Inasmuch as we must "construe the policy in a way that affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect," we cannot adopt the position of the dissent (*Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 NY2d 208, 221-222 [2002] [internal quotation marks omitted]). In any event, the fact that we and our dissenting colleague interpret the policy differently establishes, at the very least, that the policy is ambiguous and that plaintiff failed to satisfy its burden of establishing as a matter of law that there is "no other reasonable interpretation" of the exception to the exclusion (*Dean v Tower Ins. Co. of N.Y.*, 19 NY3d 704, 708 [2012] [internal quotation marks omitted]).

Based on our interpretation of the second exception, there would be coverage. The Business Corporation Law policy applied "anywhere in the world," with the exception of areas subject to trade or economic sanctions or embargoes. Inasmuch as the second exception follows the form of the underlying insurance "unless otherwise directed" by the Business Corporation Law policy, and the Business Corporation Law policy otherwise directs coverage beyond Pennsylvania, we conclude that the geographic limitation of the SWIF policy does not preclude coverage under the Business Corporation Law policy for an accident that occurred in New York State.

Contrary to plaintiff's further contention, the Business Corporation Law policy, by its clear and unambiguous terms, does not require exhaustion of the underlying SWIF policy before the Business Corporation Law policy coverage is triggered. Under the second exception to exclusion G, coverage is

provided if valid underlying insurance exists "or" would have existed but for exhaustion of the underlying limits. That exception does not require exhaustion of the underlying policy. Under the coverages section of the policy, plaintiff agreed to pay JMP "the 'ultimate net loss' in excess of the 'retained limit' because of 'bodily injury' or 'property damage' to which [the Business Corporation Law] insurance applies." The ultimate net loss is "the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay by reason of settlement or judgments" or other alternative dispute resolution, and the "retained limit" is the policy limit of the underlying insurance. Those provisions establish that plaintiff may deduct from any amount it pays to JMP the policy limit of the underlying insurance. It does not, however, require exhaustion of the underlying policy coverage.

JMP, as a nonmoving, nonappealing party, contends that we should exercise our power to search the record and award it summary judgment (see CPLR 3212 [b]; *Merritt Hill Vineyards v Windy Hgts. Vineyard*, 61 NY2d 106, 110-111 [1984]). We decline to do so. The mere fact that plaintiff did not establish as a matter of law that exclusion G precludes coverage does not, in our view, establish as a matter of law that the Business Corporation Law policy provides such coverage.

Based on our resolution, we do not address JMP's remaining contentions in response to plaintiff's appeal.

All concur except Peradotto, J.P., who dissents and votes to reverse the order insofar as appealed from in the following memorandum.

Peradotto, J.P. (dissenting). I respectfully dissent because I disagree with the majority that plaintiff failed to establish, as a matter of law, that the second exception to exclusion G in the "Business Catastrophe Liability Policy" (Business Corporation Law policy) issued to defendant J.M. Pereira & Sons, Inc. (JMP) does not apply. In my view, plaintiff established that exclusion G precludes coverage, and therefore the order insofar as appealed from should be reversed and judgment should be granted to plaintiff declaring that it is not required to provide a defense or indemnity in the underlying actions or third-party actions.

Under the Business Corporation Law policy, which provides commercial liability umbrella coverage, plaintiff agreed to "pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of 'bodily injury' . . . to which th[e] insurance applies." Unless certain exceptions are applicable, however, exclusion G to the Business Corporation Law policy

excludes employer's liability coverage for bodily injuries to JMP employees "arising out of and in the course of . . . [e]mployment by [JMP]; or . . . [p]erforming duties related to the conduct of [JMP's] business." The second exception provides that exclusion G "does not apply to the extent that valid 'underlying insurance' for the employer's liability risks described above exists or would have existed but for the exhaustion of the underlying limits for 'bodily injury'. Coverage provided will follow the provisions, exclusions and limitations of the 'underlying insurance' unless otherwise directed by this insurance." The term "underlying insurance" is defined as "any policies of insurance listed in the declarations" in the applicable schedule, which includes, as relevant here, employer's liability coverage under a policy issued to JMP by the State Workers' Insurance Fund of Pennsylvania (SWIF). The employer's liability part of the SWIF policy applies only "to work in the State of Pennsylvania," or employment that is "necessary or incidental to [JMP's] work" in Pennsylvania.

The only reasonable interpretation of the plain and unambiguous language is that the Business Corporation Law policy would provide JMP with employer's liability coverage (i.e., the exclusion would not apply) only to the extent that such coverage existed under the SWIF policy. Inasmuch as the SWIF policy does not provide employer's liability coverage for JMP's work outside of Pennsylvania, I agree with plaintiff that no "valid 'underlying insurance' for [JMP's] liability risks" exists for bodily injuries to its employees insofar as such injuries arise out of or in the course of their employment by JMP or their performance of duties related to the conduct of JMP's business.

Contrary to the majority's determination, the "follow form" provision contained in the second sentence of the second exception to exclusion G is relevant when, and only when, valid underlying insurance for the employer's liability risks exists pursuant to the first sentence of that exception. In that instance, the Business Corporation Law policy would "conform[ ] to the terms" of the underlying SWIF policy (*Federal Ins. Co. v International Bus. Machs. Corp.*, 18 NY3d 642, 646 [2012]) by "follow[ing its] provisions, exclusions and limitations," i.e., the Business Corporation Law policy would "match the coverage provided" by the SWIF policy (*Highrise Hoisting & Scaffolding, Inc. v Liberty Ins. Underwriters, Inc.*, 116 AD3d 647, 648 [2014], *lv denied* 24 NY3d 908 [2014]), "unless otherwise directed by [the Business Corporation Law policy]." Here, however, there is no "[c]overage provided" by the SWIF policy for the Business

Corporation Law policy to match or "follow form." Present—
Peradotto, J.P., Carni, Lindley and Scudder, JJ.